IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JAMES L. VAN SICKLE,<br>a/k/a Jim Scott, | )<br>)   4:04cv3239<br>) |
| Plaintiff, | )   MEMORANDUM AND ORDER<br>) |
| vs. | )<br>) |
| BILLY JOE MIZE, et al., | )<br>) |
| Defendants. | ) |

This case is before the court on the following pending matters:

1. filing no. 39, the Motion to Dismiss filed by defendants-Derrel E. Wall and Kay Wall ("Wall defendants");
2. filing no. 42, the Motion to Dismiss or Quash the Return of Service, filed by defendant-North Omaha Church of Christ on behalf of the Church and others;
3. filing no. 43, the Motion to Dismiss filed on behalf of defendant-William Hazelwood, deceased;
4. filing no. 60, the Motion to Dismiss filed by defendants-Keith Arterburn, Mike Freeman, Timothy Lowenstein and Billy Joe Mize;
5. filing no. 62, the Opposition to Motions to Dismiss filed by the plaintiff, James L. Van Sickle;
6. filing no. 79, the plaintiff's Objection to Defendant's Motion to Extend Time, Request to Deny Motion and Request for Sanctions Against Defendants for Submitting False Statements to the Court;
7. filing no. 85, the plaintiff's Notice of Information and Request to Notify FBI;
8. filing no. 86, the Objection to filing no. 85 by defendants-Arterburn, Freeman, Lowenstein and Mize;
9. filing no. 94, the plaintiff's Request for Court Ordered Federal Investigation;
10. filing no. 96, the plaintiff's Motion to Withdraw filing no. 85;
11. filing no. 97, the Wall defendants' Motion to Strike filing no. 94;
12. filing no. 101, the Motion for Extension of Time filed by defendants-Arterburn, Freeman, Lowenstein and Mize;
13. filing no. 106, the plaintiff's Motion for Court Ordered Telephonic Schedule for Conference of Parties;
14. filing no. 107, the plaintiff's Objection to filing no. 101; and
15. filing no. 111, the plaintiff's Motion to Stay Discovery.

1

The plaintiff, an inmate in a California state prison, brought this "civil rights action ... alleging repressed/suppressed memories of past-child abuse, child molestation, and false imprisonment" (filing no. 1 at 3) against persons associated with the Cornhusker Christian Children's Home ("CCCH") where the plaintiff states that he suffered abuse in the 1970s. The plaintiff alleges that defendants-Derrel E. Wall and Kay Wall, employed as house parents at the CCCH, physically, sexually and emotionally abused him when the plaintiff was 13 to 15 years old. The substance of the plaintiff's claims against the other defendants is that they negligently failed to prevent the abuse and that after they learned of the abuse, they covered it up.

## Service of Process

Certain defendants will be dismissed from this litigation because they have not been brought before the court by timely service of process. Either the defendants had died before the plaintiff filed his complaint, or the plaintiff failed to provide the U.S. Marshal with a correct address for service of process. The dismissed defendants are Don Hampton, Glen Goggins, Leonard Stevenson, Owen Anderson, William Hazelwood and Ralph Collins, as discussed below.

In filing nos. 41 and 42, the Minister of defendant-North Omaha Church of Christ establishes that he inadvertently, and without any agency or authority to do so, accepted the plaintiff's summonses mailed to defendants-Hampton, Goggins, Stevenson and Mike Freeman at the Church's address. The Church has returned the summons forms to the court with an explanation, and the plaintiff has not attempted to serve those defendants at a correct address. However, an attorney has entered an appearance on behalf of Mike Freeman. Thus, defendants-Hampton, Goggins, and Stevenson have not been properly served with process and have not voluntarily appeared. Pursuant to Fed. R. Civ. P. 4(m) (requirements for timely service of process), those defendants are dismissed from this litigation. Similarly, filing no. 49, the return of service unexecuted on defendant-Owen Anderson, indicates that the addresses furnished by the plaintiff to the U.S. Marshal for service of process did not result in service on Mr. Anderson. Therefore, pursuant to Fed. R. Civ. P. 4(m), Mr. Anderson is dismissed from this litigation.

In filing no. 43, an attorney who previously represented defendant-William Hazelwood when Mr. Hazelwood was alive, has established that Mr. Hazelwood died before the plaintiff filed this lawsuit. Therefore, filing no. 43, the Motion to Dismiss on behalf of defendant-William Hazelwood, is granted, and Mr. Hazelwood is dismissed from this litigation. Similarly, filing no. 47, the return of service unexecuted on defendant-Ralph Collins, indicates that Mr. Collins died in 2002. Therefore, that defendant is dismissed from this litigation.

## Statute of Limitations

The defendants who have responded to the complaint, as amended, assert, among other grounds for dismissal, that the plaintiff filed this action long after expiration of the

applicable statute of limitations. The plaintiff alleges two sources of federal jurisdiction in this case. First, the plaintiff claims violations of his civil rights. 28 U.S.C. § 1343 grants the federal courts original jurisdiction "[t]o redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States." 28 U.S.C. § 1343(a)(3) is the jurisdictional counterpart to 42 U.S.C. § 1983, which provides a remedy for certain deprivations of a claimant's civil rights.[1] In the alternative, the plaintiff relies on diversity of citizenship pursuant to 28 U.S.C. § 1332, and the plaintiff denies that he and any of the defendants share citizenship of the same state. Under the court's diversity jurisdiction, the plaintiff asserts claims of personal injury arising under Nebraska state law.

Under either jurisdictional basis, Neb. Rev. Stat. § 25-207 provides the applicable statute of limitations. As 42 U.S.C. § 1983 does not contain a statute of limitations, the United States Supreme Court has ruled that the limitations period for a claim arising under § 1983 is the general statute of limitations applicable to personal injury actions under the law of the state where the claim accrued. Owens v. Okure, 488 U.S. 235, 249-50 (1989); Wilson v. Garcia, 471 U.S. 261, 276 (1985). In Nebraska, that statute is the four-year personal injury statute of limitations contained in Neb. Rev. Stat. § 25-207.[2] Bridgeman v. Nebraska State Pen, 849 F.2d 1076, 1077 (8th Cir. 1988) (*per curiam*).

Just as the applicable state statute of limitations is "borrowed" for § 1983 claims, so are the state's tolling rules. See, e.g., Hardin v. Straub, 490 U.S. 536, 540 (1989); Board of Regents v. Tomanio, 446 U.S. 478, 485-86 (1980). See also Bridgeman v. Nebraska State Pen, 849 F.2d at 1078 ("[t]he use of a state's statute of limitations also requires the use of its tolling statutes and the operation thereof is governed by state law"). Neb. Rev. Stat. § 25-213, tolls the statute of limitations for the period of certain legal disabilities including minority.

The last act of sexual abuse alleged by the plaintiff occurred in 1978, at which point the plaintiff reported the abuse to police. Thereafter, he left CCCH. Thus, reading Neb. Rev. Stat. §§ 25-207(3) together with 25-213, the plaintiff had until four years after he attained the age of 21 to file suit based on the abuse which occurred during his minority. The plaintiff, born in July of 1962, became 21 in July of 1983. He then had until July of 1987 to file suit. He did not initiate legal proceedings until July of 2004, approximately 17 years too late.

---

[1]The defendants deny that the plaintiff has stated a claim against them on which relief may be granted pursuant to 42 U.S.C. § 1983, a matter which is discussed later in this Memorandum and Order.

[2]Neb. Rev. Stat. § 25-207 states in pertinent part: "The following actions can only be brought within four years: ... (3) an action for an injury to the rights of the plaintiff, not arising on contract, and not hereinafter enumerated ...."

The plaintiff claims that the statute of limitations was tolled beyond July of 1987 because of his "repressed/suppressed memories." However, the plaintiff appears to misunderstand the concept of repressed memory syndrome. At no time was the plaintiff "wholly unaware" of the abuse perpetrated upon him. In fact, his own statements in this case indicate that over the years, he reported the abuse, discussed it and thought about it frequently. The initial "discovery" of a repressed memory is wholly different from ongoing recollection and awareness of the abuse but, for example, delayed discovery of the full extent of the harm or lingering emotional inability to initiate legal proceedings to redress the injury. See, e.g., Kraft v. St. John Lutheran Church, 414 F.3d 943, 947 n.3 (8th Cir. 2005): "This case does not involve the discovery of a repressed memory. [The plaintiff] has always retained an awareness of the facts of the claimed abuse."

As discussed below, the plaintiff's own submissions contradict his allegations of repressed memory.

The plaintiff was aware of the acts perpetrated against him when they occurred. He knew he had been physically and sexually abused, and he knew the identity of the abusers. Finally, on January 31, 1978, the plaintiff reported the abuse to the police. (See filing no. 1, Exh. C, plaintiff's Declaration, at ¶¶ 47, 50-60; Exh. H, Declaration of plaintiff's mother, at ¶ 43.) Within several days thereafter, the plaintiff described the details of the abuse to Billy Joe Mize, Supervisor and member of the Board of Directors of CCCH, and church Elder. (Id., Exh. C at ¶¶ 63-66, 68.) The plaintiff also discussed the abuse with Mike Freeman, at the request of Mize who wanted to determine how the plaintiff wished to proceed. (Id., Exh. C at ¶¶ 67.) Freeman informed the plaintiff that the Walls had confessed to the abuse. (Id.)

During 1978 and 1979 at ages 16 and 17, while placed at the Lincoln Regional Center for mental health evaluation and treatment, the plaintiff discussed the abuse. (See filing no. 1, Exh. C, plaintiff's Declaration, at ¶ 97; filing no. 7, Exh. A at ¶ 6). During this time, the plaintiff states that he began to want to kill child molesters who harmed children the way Derrel Wall had molested him. (See filing no. 1, Exh. C at ¶ 102.)

In August of 1981 at age 19, the plaintiff discussed the abuse in the course of an examination of his mental fitness to serve in the United States Marine Corps. See Test Report 8-11-81 by "ACA" Adobe Counseling Associates of Vista, California (Exh. B to filing no. 7). Regarding CCCH, the examining psychologist reported: "[Mr. Van Sickle] claims to have been sexually molested by the school administrator at age 15. He reported the administrator to police and was returned home. This experience was traumatic for him and he has never recovered from it adequately." (Id. at 1.) The plaintiff incorporates the ACA report into his Second Amended Complaint (filing no. 16 at ¶¶ 57, 58). Just before the plaintiff left to join the marine corps, he told his psychologist at the Lincoln Regional Center that now he could better learn to kill bad people like his house father. (See filing no. 1, Exh. C at ¶ 103.) The psychologist wrote down the plaintiff's words, and the statement was introduced in the plaintiff's criminal trial in California during 1998 (see below).

4

After his discharge from the marine corps, the plaintiff inflicted injury on a series of men who were "like [his CCCH] house father." (See filing no. 1, Exh. C at ¶¶ 105-110.)

In 1998 when the plaintiff was 36 years old, the abuse became an issue in the course of the plaintiff's prosecution for murder in California. As a result, an investigator, Bob Zink of Vista, California, attempted to confirm the plaintiff's allegations. (See Mr. Zink's reports of two interviews conducted in Nebraska regarding the plaintiff's allegations of sexual abuse by Derrel Wall; Exh. I to filing no. 1; Exhs. F and G to filing no. 7.) The plaintiff incorporates the interview reports by investigator Zink into his Second Amended Complaint (filing no. 16 at ¶¶ 63, 64). As the investigator reports that no public records of the abuse exist, only the plaintiff could have introduced the matter into his criminal trial.

Thus, the plaintiff's own filings indicate that he experienced no loss of memory of the abuse at any time in his life after the abuse occurred. At the very latest, the plaintiff recalled the abuse when he raised the subject during his 1998 murder trial in California. In the remote event that the statute of limitations did not begin to run until 1998, the limitations period expired four years thereafter in 2002, two years before the plaintiff filed his complaint in the above-entitled case.

The Nebraska Supreme Court has not been receptive to tolling a statute of limitations based on repressed memories of sexual abuse, at least if the plaintiff retained memory of the abuse at any time between the events and the commencement of litigation. See Teater v. State of Nebraska, 559 N.W.2d 758 (Neb. 1997). In Teater, the plaintiff sued the State of Nebraska under the State Tort Claim Act for damages resulting from the negligence of social service officials who failed to protect the plaintiff, a ward of the State, from sexual abuse from the ages of 6 to 14 (1962-1970) by her foster father. The plaintiff, who filed suit at the age of 36, alleged "that she was unaware of the sexual abuse because the traumatic nature of the conduct led her to repress the memory of such conduct until September 1991." Id. at 761, 762.

However, at the age of 14, the plaintiff had accused her foster father of sexual abuse, which led to her release from the custody of her foster parents. Id. at 762. Therefore, the plaintiff's cause of action accrued at the latest when she was 14 years of age, because she had knowledge of all relevant facts at that time. The statute of limitations did not begin to run during her minority. However, upon her majority, the statute of limitations would no longer be tolled on any theory of repressed memory, because the plaintiff had previously "discovered" the factual basis of her cause of action at age 14. Id. at 763.

Thus, in light of Teater, it is doubtful that repression of memories could toll a statute of limitations in Nebraska when repression occurs *after* the plaintiff has already "discovered" the factual basis of his or her cause of action. Accordingly, even disregarding the plaintiff's awareness and recollection of the abuse in 1998, his report of the abuse in 1978 eliminates tolling based on repressed memory, in light of the Nebraska Supreme Court's decision in Teater. That the plaintiff's life was frequently in turmoil, and he could

5

not emotionally manage to bring this lawsuit earlier does not toll the limitations period. The plaintiff's complaint, as amended, and this action must be dismissed as time-barred.

## Civil Rights

The defendants also move for dismissal of the plaintiff's § 1983 claims because of the absence of any "state action." To state a claim for relief in an action brought under 42 U.S.C. § 1983, the plaintiff must establish that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed *under color of state law*. Purely private individuals and entities who commit torts, i.e., civil wrongs, against other private parties are generally not acting "under color of state law" when they commit those acts. The allegations of the plaintiff's complaint do not suggest that any defendant acted under color of state law in this matter or that any defendant can be considered a state actor.[3]

Construing the complaint, as amended, very liberally, the plaintiff argues that Mike Freeman, County Attorney of Red Willow County, Nebraska, in 1978, acted under color of state law. However, the only conduct attributed to Freeman by the plaintiff amounted to an investigation of the abuse after the plaintiff reported it to police in 1978, and encouraging the plaintiff not to file charges.[4] Because the plaintiff never pressed charges against the Walls or any other defendant, Freeman apparently undertook his investigation as a member of the Board of Directors of CCCH, rather than in his capacity as a County official. At any rate, even if Freeman could be considered a state actor, none of the other named defendants acted under color of state law. Therefore, the plaintiff's § 1983 claims must be dismissed against all defendants, with the possible exception of Freeman, on the alternate ground of failure to state a claim on which relief may be granted.

THEREFORE, IT IS ORDERED:

1. That the defendants' Motions to Dismiss (filing nos. 39, 42, 43 and 60) are granted;

2. That the plaintiff's Opposition to Motions to Dismiss (filing no. 62) is denied;

3. That the plaintiff's complaint, as amended, and this action are dismissed with prejudice as untimely;

---

[3]The plaintiff's parents, not any governmental actor, placed the plaintiff at CCCH. The plaintiff acknowledges that CCCH was privately funded and operated.

[4]The plaintiff reports that, as a result of the investigation, the Walls were immediately relieved of their duties and allowed to resign (filing no. 63 at 17). The Walls then left Nebraska.

4. That all other pending motions and matters (filing nos. 79, 85, 86, 94, 96, 97, 101, 106, 107, and 111) are denied as moot; and

5. That a separate judgment will be entered in accordance with this Memorandum and Order.

DATED this 9th day of September, 2005.

BY THE COURT:


s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
Chief District Judge